1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   TERRY DON EVANS,              )   Civil No. 06cv877-JM (RBB)
                                   )
12              Plaintiff,         )   **REPORT AND RECOMMENDATION RE:**
                                   )   **DENYING DEFENDANTS' MOTION TO**
13   v.                            )   **DISMISS OR TO REQUIRE A MORE**
                                   )   **DEFINITE STATEMENT [DOC. NOS.**
14   COUNTY OF SAN DIEGO; WILLIAM B. )  **27, 28] AND DENYING**
     KOLENDER, Sheriff; JOHN/JANE  )   **PLAINTIFF'S MOTION TO FILE**
15   DOE #1, Chief Medical Officer, )  **THIRD AMENDED COMPLAINT [DOC.**
                                   )   **NO. 40]**
16              Defendants.        )
     _____)

17

18       Plaintiff, a state prisoner proceeding pro se and in forma

19   pauperis, filed a civil rights complaint pursuant to 42 U.S.C. §

20   1983 on April 13, 2006 [doc. no. 1].  On January 8, 2007, Evans

21   filed his Second Amended Complaint [doc. no. 18].  Plaintiff

22   alleges that Defendants denied him adequate and meaningful medical

23   treatment, or delayed in providing that treatment, amounting to

24   deliberate indifference to Plaintiff's serious medical needs in

25   violation of his Fifth and Fourteenth Amendment rights.  (Second

26   Am. Compl. 7-8.)  Evans filed a verification of his Second Amended

27   Complaint [doc. no. 20] on January 11, 2007.

28

On March 19, 2007, Defendants filed a Motion to Dismiss the Second Amended Complaint or to Require a More Definite Statement, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), along with a Memorandum of Points and Authorities in Support of the Motion [doc. no. 27] and a Notice of Lodgment with six exhibits. Defendants filed an Amended Notice of Motion [doc. no. 28] on March 26, 2007, correcting the hearing date, time, and place.  Defendants argue the current action should be dismissed for four reasons. First, this suit is barred by res judicata because Plaintiff previously brought an action against them in state court based on the same facts.  (Mot. to Dismiss 2.)  Second, California's two-year statute of limitations has expired, thus barring Evans's claims.  (Id.)  Third, Plaintiff's allegations do not state a cause of action for deliberate indifference.  (Id.)  Fourth, Plaintiff failed to exhaust his administrative remedies.  (Id.)  In the alternative, Defendants move for a more definite statement, alleging that the Second Amended Complaint is vague and conclusory, and Defendants cannot properly prepare a responsive pleading. (Id.)

Evans's Opposition to Defendant[s'] Motion to Dismiss was filed nunc pro tunc to June 15, 2007 [doc. no. 36].  Plaintiff also filed a Notice of Lodgment [doc. no. 37] with ten exhibits.  Evans alleges:  (1) His claims are not barred by res judicata because his state action was brought under the California Tort Claims Act rather than 42 U.S.C. § 1983; (2) he is entitled to equitable tolling of the statute of limitations; (3) he has made sufficient factual allegations to state a claim under § 1983; and (4) he complied with the exhaustion requirements of the Prison Litigation

Reform Act, 42 U.S.C. § 1997(e).  (Pl.'s Opp'n 2, 4-9.)  Plaintiff requests that he be given leave to file a further amended complaint to correct any deficiencies in his Second Amended Complaint.  (Id. at 3.)

Defendants filed a Reply to Plaintiff's Opposition to Motion to Dismiss on June 25, 2007 [doc. no. 38].  On July 9, 2007, the Court issued a Klingele/Rand Notice [doc. no. 41] warning Evans of the pending Motion to Dismiss for failure to exhaust and allowing him time to present any additional evidence demonstrating exhaustion.  Plaintiff submitted a response to the Klingele/Rand Notice [doc. no. 47] which was filed nunc pro tunc to August 9, 2007.

On July 2, 2007, Evans filed a motion to file a third amended complaint [doc. no. 40].  Defendants filed a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint [doc. no. 45] on August 9, 2007.  The Court found Plaintiff's motion to be suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1) [doc. no. 44]. The Court also finds Defendants' Motion to Dismiss to be suitable for resolution on the papers.

For the reasons set forth below, the district court should **DENY** Defendants' Motion to Dismiss and **DENY** Plaintiff's Motion to Amend.

### I. FACTUAL BACKGROUND

In January 2004, Evans was housed as a pretrial detainee in the San Diego County detention facility in Vista, California. (Second Am. Compl. 3.)  On January 27, Plaintiff slipped and fell while exiting the shower area of a housing unit.  (Id.)  Evans

06cv877-JM (RBB)

alleges that his right knee and leg were injured and he suffered severe pain. (Id.) He was examined by a doctor on January 29, 2004, at which time it was noted that Plaintiff had pain above his right knee and slight swelling of his right calf, but he was able to walk "without much difficulty." (Second Am. Compl. Ex. A at 3.) It was also noted that Evans was already taking Ultram and Tylenol -- two pain relievers -- for another condition. (Id.); see http://www.webmd.com/drugs/index-drugs.aspx (search for "Ultram"). Plaintiff was scheduled for a follow-up examination on February 1, 2004. (Second Am. Compl. Ex. A at 3-4.) Dr. John Gill examined him on February 1, and prescribed Motrin and the use of a knee brace. (Id. at 4-5.)

On February 9, 2004, Evans was seen by Dr. Earl Goldstein for another medical condition, and during the examination he complained that he was still experiencing knee pain and requested a follow-up exam. (Id. at 6.) Plaintiff was examined by Dr. William Sereda that day. (Id. at 7.) An x-ray showed a normal right knee. (Id. at 7, 9.) Evans was scheduled for a follow-up examination two weeks later. (Id. at 8, 10.) Plaintiff was seen by Dr. Michele Grad February 24, 2004. (Id. at 11.) Dr. Grad referred him to an orthopedist. (Id.)

On February 28, 2004, Evans was examined by Dr. Steven Lee, an orthopedic specialist. (Id. at 12.) Dr. Lee suspected that Plaintiff must have suffered a meniscus tear. (Id.) At that time, Evans stated that he did not want surgery, and instead he chose to explore nonoperative treatment. (Id.) Plaintiff was prescribed Bextra and told to modify his activities. (Id. at 12-13.) Dr. Lee also noted that if after six weeks of treatment Plaintiff's

1   symptoms remained and he wanted to undergo surgery, Evans would be

2   referred to the University of California at San Diego ("UCSD")

3   hospital for an MRI. (Id. at 12.)

4       Plaintiff saw Dr. Damon London on March 8, 2004, after

5   complaining that his right leg was swollen from the knee down, and

6   he was experiencing numbness in his leg. (Id. at 14.) Evans was

7   referred back to the orthopedic clinic. (Id.) He returned to Dr.

8   Sereda on March 15, 2004, at which time he stated that he wanted to

9   proceed with surgery. (Id. at 15.) He was seen again on March 26,

10  2004, by Dr. Grad; he complained that he needed stronger pain

11  medication, and he had a possible spider bite on his left leg.

12  (Id. at 17.) The "spider bite" was actually an infection, for

13  which Evans was prescribed Cleocin. (Id.) Plaintiff requested

14  that his prescription for Ultram be continued for his knee pain

15  because Tylenol was not effective. (Id. at 19.)

16      Evans was seen by Dr. Gill on April 5, 2004, and he informed

17  the doctor that his pain had not improved despite the exercises,

18  and he requested that he be seen at UCSD hospital. (Id. at 26.)

19  On April 10, 2004, Plaintiff was again seen by Dr. Lee. (Id. at

20  13.) His knee pain was still present, and Dr. Lee wanted Evans to

21  get an MRI; if the MRI was positive, surgery should be scheduled.

22  (Id.)

23      Plaintiff was transferred to George Bailey Detention Center on

24  April 30, 2004. (Id. at 3; Second Am. Compl. 4.) On May 3, 2004,

25  Evans was taken to UCSD hospital and a MRI of his knee was taken.

26  (Second Am. Compl. Ex. A at 2.) The MRI showed multiple

27  abnormalities including a probable sprain of the superficial fibers

28  of the medial collateral ligament, disruption of the meniscal

femoral ligament, possible disruption of the medial patellar
retinaculum at the femoral attachment site, a small ganglion cyst
of the posterior cruciate ligament, and an oblique tear of the
medial meniscus.  (Id.)  Plaintiff was seen at the orthopedic
clinic on May 15, 2004, at which time the doctor noted that he
would benefit from surgery but it was not an emergency situation.
(Id. at 29.)  Evans also had an appointment at UCSD hospital on May
17, 2004.  (Id. at 30.)

On June 1, 2004, Plaintiff was again seen regarding his
continuing knee pain and unrelated pain in his right wrist.  (Id.
at 33.)  It was noted that Evans needed a reevaluation by an
orthopedist for possible surgery on his knee.  (Id.)  He was seen
by an orthopedist on June 5, 2004, and the doctor recommended
surgical intervention.  (Id. at 34.)  Plaintiff was transferred
from George Bailey to state prison on June 10, 2004.  (Second Am.
Compl. 5; see Second Am. Compl. Ex. A at 34.)  Evans continued to
seek medical treatment for his knee pain at Centinela State Prison.
(See Second Am. Compl. Ex. H at 56-66.)  He underwent surgery on
July 8, 2005.  (Id. at 52-54.)  His knee later worsened again, and
he was recommended for a second knee surgery.  (Id. at 32-33; see
Second Am. Pet. 6 (alleging that Evans underwent a second surgery
on December 22, 2006).)

On June 4, 2004, Plaintiff submitted a claim to San Diego
County requesting monetary damages because he claimed his slip-and-
fall injury was caused by the lack of mats or anti-skid protection
on the floor of the shower area at the Vista detention facility.
(See Pl.'s Lodgment No. 10(h), County Claim Form, File No. 040266
(June 4, 2004).)  His claim was denied on July 9, 2004.  (Pl.'s

Lodgment No. 10(f), Notice of Rejection of Claim, File No. 040266 (July 9, 2004).)  Evans submitted an amended claim in November 2004; it was rejected on December 1, 2004.  (Pl.'s Lodgment No. 10©), Letter from County Counsel to Terry Evans (Dec. 1, 2004); Pl.'s Lodgment No. 10©), Attach. Am. Claim, File No. 040266 (Nov. 24, 2004).)

On February 14, 2005, Plaintiff filed a lawsuit in the San Diego Superior Court against the County of San Diego, the San Diego Board of Supervisors, and several individual defendants. (Defs.' Lodgment No. 1, <u>Evans v. County of San Diego</u>, No. GIN042737, Compl. 1-3 (Cal. Super. Ct. filed Fed. 14, 2005).)  Evans alleged three causes of action -- general negligence, intentional tort, and premises liability -- based on the allegedly unsafe condition of the flooring in the shower area that caused him to slip and fall. (<u>Id.</u> at 4, 7-9.)  Plaintiff's state complaint also purported to state a claim under 42 U.S.C. § 1983.  (<u>Id.</u> at 4-5.)  Plaintiff filed an amended complaint in the superior court on April 21, 2005. (Defs.' Lodgment No. 3, <u>Evans v. County of San Diego</u>, No. GIN042737, Am. Compl. (Cal. Super. Ct. filed Apr. 21, 2005).) Evans's amended complaint asserted the same causes of action that were presented in his original complaint, and it also included a claim that defendants acted with deliberate indifference to his health, safety, and welfare.  (<u>Id.</u> at 6.)  He named as defendants the County of San Diego; five individual members of the County Board of Supervisors; William Kolender, Sheriff; Captain Collins, Jail Commander of Vista Detention Facility; John Doe, Supervisor of Maintenance at Vista Detention Facility; and Walt Eckard, Administrative Officer.  (<u>Id.</u> at 1-4.)

06cv877-JM (RBB)

Defendants County of San Diego and County of San Diego Board of Supervisors filed a demurrer, which the court sustained without leave to amend on October 14, 2005.  (Defs.' Lodgment No. 2, <u>Evans v. County of San Diego</u>, No. GIN042737, Tentative Ruling for Oct. 7, 2005, at 1-2 (Cal. Super. Ct. Apr. 28, 2006); Pl.'s Lodgment No. 4 Attach., <u>Evans v. County of San Diego</u>, No. GIN042737, Notice of Ruling on Demurrer 1 (Cal. Super. Ct. Apr. 28, 2006).)  The superior court found that Evans had failed to allege the elements supporting a cause of action under § 1983, and he failed to state a claim on his other causes of action because the defendants were immune from liability and because Plaintiff had not shown that defendants were in control of the Vista detention center or otherwise owed a duty of care to Evans.  (Defs.' Lodgment No. 2, <u>Evans v. County of San Diego</u>, No. GIN042737, Tentative Ruling for Oct. 7, 2005, at 1-2.)  Defendants Kolender and Eckard also filed a demurrer, which the court sustained on November 4, 2005.  (Defs.' Lodgment No. 4, <u>Evans v. County of San Diego</u>, No. GIN042737, Tentative Ruling for Nov. 4, 2005, at 1 (Cal. Super. Ct. Apr. 28, 2006); Pl.'s Lodgment No. 4 Attach., <u>Evans v. County of San Diego</u>, No. GIN042737, Superior Court Mins. Nov. 4, 2005, at 1 (Cal. Super Ct. Apr. 28, 2006).)

Defendants Captain Collins and the Doe defendant (later identified as Timothy Jordan) were granted summary judgment on March 30, 2006.  (Pl.'s Lodgment No. 4 Attach., <u>Evans v. County of San Diego</u>, No. GIN042737, Order for Entry of Judgment 2 (Cal. Super. Ct. Apr. 28, 2006).)  Because the superior court had either sustained demurrers without leave to amend or granted summary judgment for all defendants named in Evans's first amended

8

complaint, the court dismissed the complaint on April 28, 2006. (<u>Id.</u>)  Plaintiff had previously filed a notice of appeal of the court's rulings on the demurrers and the summary judgment motions, but he abandoned the appeal and it was subsequently dismissed. (Defs.' Lodgment No. 5, <u>Evans v. County of San Diego</u>, No. GIN042737, Notice of Filing 1 (Cal. Super. Ct. filed Apr. 4, 2006); Defs.' Lodgment No. 6, <u>Evans v. County of San Diego</u>, No. GIN042737, Notice of Failure to Clear Default 1 (Cal. Super. Ct. filed Apr. 26, 2006).)

## II.   LEGAL STANDARDS APPLICABLE TO A RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Rule 12(b)(6) Motions to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  A claim can only be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  <u>Hughes v. Rowe</u>, 449 U.S. 5, 10 n.7 (1980) (quotations and citations omitted).  The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The question is not whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

The Court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, 382 F.3d at 973 (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, the Court may not generally consider materials outside the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th

Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2], at 12-72 (3d ed. 1997) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.   Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

11

1  of liberal construction is "particularly important in civil rights

2  cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

3  In giving liberal interpretation to a pro se civil rights

4  complaint, however, the Court may not "supply essential elements of

5  claims that were not initially pled." Ivey v. Bd. of Regents of

6  the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and

7  conclusory allegations of official participation in civil rights

8  violations are not sufficient to withstand a motion to dismiss."

9  Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th

10 Cir. 1984) (finding conclusory allegations unsupported by facts

11 insufficient to state a claim under § 1983).  "The plaintiff must

12 allege with at least some degree of particularity overt acts which

13 defendants engaged in that support the plaintiff's claim." Jones,

14 733 F.2d at 649 (internal quotation omitted).

15      Nevertheless, the Court must give a pro se litigant leave to

16 amend his complaint unless it is "absolutely clear that the

17 deficiencies of the complaint could not be cured by amendment."

18 Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987).  Thus, before

19 a pro se civil rights complaint may be dismissed, the Court must

20 provide the plaintiff with a statement of the complaint's

21 deficiencies.  Karim-Panahi, 839 F.2d at 623-24.  Where amendment

22 of a pro se litigant's complaint would be futile, denial of leave

23 to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077

24 (9th Cir. 2000).

25 **C.   Stating a Claim Under 42 U.S.C. § 1983**

26      To state a claim under § 1983, the plaintiff must allege facts

27 sufficient to show (1) a person acting "under color of state law"

28 committed the conduct at issue, and (2) the conduct deprived the

plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

### III. PLAINTIFF'S CLAIM IS NOT BARRED BY THE DOCTRINE OF RES JUDICATA.

Defendants first claim that Plaintiff's action is barred by the doctrine res judicata because his Second Amended Complaint presents the same claim that was considered and rejected by the superior court.  (Defs.' Mem. of P. & A. 6.)  Evans contends that his claim is not barred because his state lawsuit presented claims under the California Tort Claims Act, while his federal lawsuit presents a claim under 42 U.S.C. § 1983.  (Pl.'s Opp'n 6; Pl.'s Mem. of P. & A. 9.)

When a case has reached a final judgment on the merits, future claims by the same parties or their privies are barred by the doctrine of res judicata.  Robi v. Five Platters, Inc., 838 F.2d 318, 321-22 (9th Cir. 1988).  In addition to barring claims that were actually litigated, res judicata also "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  Brown v. Felsen, 442 U.S. 127, 131 (1979).  Res judicata "treats a judgment, once rendered, as the full measure of relief to be accorded between the parties on the same 'claim' or 'cause of action.'"  Robi, 838 F.2d at 321 (quoting Kaspar Wire Works, Inc. v. Leco Eng'q & Mach., Inc., 575 F.2d 530, 535 (5th Cir. 1978)).

Claims that were litigated in a state court proceeding will be barred by res judicata in a subsequent federal § 1983 suit to the

same extent that they would be barred in the state court that
rendered judgment.  Migra v. Warren City Sch. Dist. Bd. Of Educ.,
465 U.S. 75, 85 (1984); see also Exxon Mobil Corp. v. Saudi Basic
Indus. Corp., 544 U.S. 280, 293 (2005) (stating that federal court
is bound by preclusive effects of state court judgment).
Accordingly, the Court must apply the law of the state court that
issued the earlier judgment -- in this case California -- to
determine whether Plaintiff's subsequent claim is barred.  Palomar
Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th
Cir. 1993) (citing Southeast Res. Recovery Facility Auth. v.
Montenay Int'l Corp., 973 F.2d 711, 712-24 (9th Cir. 1992)).

     "In order to bar a later suit under the doctrine of res
judicata, an adjudication must (1) involve the same 'claim' as the
later suit, (2) have reached a final judgment on the merits, and
(3) involve the same parties or their privies."  Brooks v.
Alameida, 446 F. Supp. 2d 1179, 1182 (S.D. Cal. 2006) (quoting
Nordhorn v. Ladish Co., 9 F.3d 1402, 1404 (9th Cir. 1993)).

     **A.   Same Claim**

     Plaintiff alleges that his state lawsuit was based on the
California Tort Claims Act, while the present suit is based on §
1983.  (Pl.'s Opp'n 6; Pl.'s Mem. of P. & A. 9-10.)  Defendants
contend that Evans's claim is nonetheless barred because the
present suit is based on the same factual and legal allegations as
the prior state suit.  (Defs.' Mem. of P. & A. 6-7.)

     "California has consistently applied the 'primary rights'
theory, under which the invasion of one primary right gives rise to
a single cause of action."  Robi, 838 F.2d at 324 (quoting Slater

1  v. Blackwood, 15 Cal. 3d 791, 795, 543 P.2d 593, 594, 126 Cal.

2  Rptr. 225, 226 (1975)).

3      [I]f two actions involve the same injury to the plaintiff
   and the same wrong by the defendant then the same primary

4      right is at stake even if in the second suit the
   plaintiff pleads different theories of recovery, seeks

5      different forms of relief and/or adds new facts
   supporting recovery.

6

7  Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174, 197 Cal.

8  Rptr. 612, 614 (1983); accord Crowley v. Katleman, 8 Cal. 4th 666,

9  681, 881 P.2d 1083, 1090, 34 Cal. Rptr. 2d 386, 393 (1994).

10      "[T]he single most important factor in determining whether a

11  single course of conduct has violated more than one primary right

12  is whether plaintiff suffered injury to more than one interest."

13  Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist., 750

14  F.2d 731, 738 (9th Cir. 1984).  For res judicata purposes, "injury"

15  refers to the invasion of a legally protected interest, rather than

16  the resultant physical or emotional harm.  Migliori v. Boeing N.

17  Am., Inc., 97 F. Supp. 2d 1001, 1007 (C.D. Cal. 2000) (citations

18  omitted).

19      Here, Evans's Amended Complaint presents a different claim

20  than was presented in his state action.  In the state case,

21  Plaintiff complained that on January 27, 2004, the floor of the

22  jail shower area constituted a dangerous condition because it was

23  not equipped with skid-proof coating, and the jail officials failed

24  to warn inmates of the floor's dangerous condition.  (Defs.'

25  Lodgment No. 3, Evans v. County of San Diego, No. GIN042737, Am.

26  Compl. 9-11.)  Evans further alleged that the dangerous condition

27  of the floor was the cause of his slip-and-fall, and he suffered

28  serious physical injuries as a result.  (Id.)

But in the state court, Plaintiff did not allege that the defendants were deliberately indifferent to his medical needs by failing to provide prompt and adequate medical treatment, as he alleges in his federal case.  Thus, his state cause of action was based on the invasion of one primary right -- the right to be protected from dangerous conditions -- while the federal cause of action focuses on a different primary right -- the right to be provided prompt and adequate medical care.  It does not matter that both injuries resulted in physical harm to Evans's knee.  <u>See</u> <u>Migliori</u>, 97 F. Supp. 2d at 1007 (stating that separate wrongful acts, each of which physically harms the plaintiff's body, make up separate causes of action); <u>Weikel v. TCW Realty Fund II Holding</u> <u>Co.</u>, 55 Cal. App. 4th 1234, 1246-47, 65 Cal. Rptr. 2d 25, 32 (Ct. App. 1997) (explaining that the invasion of one primary right creates one injury, and accordingly it gives rise to a single cause of action); <u>cf.</u> <u>Harris v. Jacobs</u>, 621 F.2d 341, 343-44 (9th Cir. 1980) (finding no res judicata effect when prior claim alleged violation of the Eighth Amendment right to adequate medical care and subsequent claim alleged improper denial of inmate's state-granted right to consult nonprison doctor at his own expense).

Defendants point out that Plaintiff's complaint in the state court action made reference to 28 U.S.C. § 1983 and asserted that the defendants were liable under the federal statute for actions they took under color of state law.  (Defs.' Mem. of P. & A. 6; <u>see</u> Defs.' Lodgment No. 1, <u>Evans v. County of San Diego</u>, No. GIN042737, Compl. 4-5.)  Evans's amended state complaint specifically alleged that the defendants had acted with deliberate indifference to his health and safety in violation of § 1983 and Evans's rights under

the Eighth and Fourteenth Amendments.  (Defs.' Lodgment No. 3,
Evans v. County of San Diego, No. GIN042737, Am. Compl. 6-7.)
After the County of San Diego filed a demurrer to his amended
complaint, Evans filed a motion to strike his claim for relief
under § 1983.  (See Defs.' Lodgment No. 2, Evans v. County of San
Diego, No. GIN042737, Tentative Ruling for Oct. 7, 2005, at 1;
Pl.'s Lodgment No. 3, Evans v. County of San Diego, No. GIN042737,
Mot. to Strike 1-2 (Cal. Super. Ct. Apr. 28, 2006).)  The court did
not grant his motion, instead finding that by moving to strike his
§ 1983 claim, Plaintiff appeared to "concede the merit of the
Defendants' demurrer to this cause of action."  (Defs.' Lodgment
No. 2, Evans v. County of San Diego, No. GIN042737, Tentative
Ruling for Oct. 7, 2005, at 1.)

Although Evans presented a § 1983 claim to the state court,
his § 1983 claim in the present federal suit is not precluded
because the two claims allege different injuries.  Plaintiff's
state action alleged that he was injured on January 27, 2004,
because Defendants were indifferent to his health and safety by
maintaining the hazardous condition of the floor.  Evans's federal
cause of action, however, focuses on the separate right to have
prompt and meaningful access to medical services to treat that
injury.  These two primary rights constitute separate claims.

**B.  Final Judgment on the Merits**

"In California, a judgment entered after the sustaining of a
general demurrer is a judgment on the merits, and, to the extent
that it adjudicates that the facts alleged do not establish a cause
of action, it will bar a second action on the same facts."  Palomar
Mobilehome Park Ass'n, 989 F.2d at 364 (citing Crowley v. Modern

1  <u>Faucet Mfg. Co.</u>, 44 Cal. 2d 321, 322, 282 P.2d 33, 34 (1955)).

2  Summary judgment also constitutes a final judgment on the merits

3  for preclusion purposes.  <u>Kourtis v. Cameron</u>, 419 F.3d 989, 996 n.4

4  (9th Cir. 2005) (citing <u>Jackson v. Hayakawa</u>, 605 F.2d 1121, 1125

5  n.3 (9th Cir. 1979)).  All of the claims asserted by Plaintiff in

6  his state court lawsuit were resolved either through summary

7  judgment or by the sustaining of demurrers.  (<u>See</u> Pl.'s Lodgment

8  No. 4 Attach., <u>Evans v. County of San Diego</u>, No. GIN042737, Order

9  for Entry of Judgment 2.)  Accordingly, Evans's prior suit reached

10  a final judgment on the merits.

11     **C.   <u>Same Parties</u>**

12       The third element is met when the parties to the former and

13  present cause of action are identical, or when they are privies.

14  Privity is found when a person essentially holds the same position

15  or relationship that the person in the prior action held, thereby

16  "represent[ing] precisely the same right in respect to the subject

17  matter involved."  <u>Kourtis v. Cameron</u>, 419 F.3d 989, 996 (9th Cir.

18  2005).

19       In both Evans's state suit and the present federal suit, the

20  City of San Diego and Sheriff William Kolender were named as

21  Defendants.  (<u>Compare</u> Defs.' Lodgment No. 3, <u>Evans v. County of San</u>

22  <u>Diego</u>, No. GIN042737, Am. Compl. 1-3, <u>with</u> Second Am. Compl. 2.)

23  Plaintiff's state action also named five members of the San Diego

24  County Board of Supervisors, a San Diego County administrative

25  officer, the Commander of Vista Jail, and the Vista Jail's building

26  and maintenance supervisor.  (Defs.' Lodgment No. 3, <u>Evans v.</u>

27  <u>County of San Diego</u>, No. GIN042737, Am. Compl. 2-3.)  These

28  individuals, along with several others, were also named in Evans's

federal Complaint, but they were dismissed and not named in Plaintiff's Second Amended Complaint.  (<u>See</u> Am. Compl. 1-12; Second Am. Compl. 1-2; Order Sua Sponte Dismissing Compl. [doc. no. 10] 7-8.)  The County of San Diego and Sheriff Kolender were parties in the prior suit and could be barred by res judicata if the same claim had been presented against them in the present suit, but res judicata cannot apply to the "chief medical officer" named as a Defendant in the present suit because neither he nor his privy was named in the previous state litigation.  Regardless, as discussed above, Plaintiff's Second Amended Complaint does not present the same claim that was adjudicated in his prior state lawsuit, and accordingly, Evans's federal action should not be dismissed based on res judicata.

## IV. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Section 1983 contains no statute of limitations.  <u>See</u> 42 U.S.C.A. § 1983 (West 2003).  Federal courts must therefore apply the state's personal injury statute of limitations, as well as any state law tolling provisions that are not contrary to federal law. <u>Azer v. Connell</u>, 306 F.3d 930, 935-36 (9th Cir. 2002) (citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985); <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1151 (9th Cir. 2000); <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 992 (9th Cir. 1998)).

California law imposes a two-year statute of limitations for personal injury actions.  Cal. Civ. Proc. Code § 335.1 (West Supp. 2005); <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004). "Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim

accrues.'"   <u>Azer</u>, 306 F.3d at 936 (quoting <u>Morales</u>, 214 F.3d at 1153-54).   "Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'"   <u>Id.</u> (quoting <u>Morales</u>, 214 F.3d at 1154).

Defendants assert that Evans's cause of action accrued on January 27, 2004, when he was injured.   (Defs.' Mem. of P. & A. 7.) They argue that any actions that occurred before April 13, 2004, two years before Plaintiff filed this action, are barred by the statute of limitations.   (Reply 2.)   Plaintiff argues that his claim did not accrue on January 27, 2004; instead, Evans contends that because his claim is based on a continuing violation, the statute began to run anew on each day that his knee remained untreated.   (Pl.'s Opp'n 7; Pl.'s Mem. of P. & A. 10-11.)

For continuing violations, the statute of limitations does not begin to run until the violation or series of violations ends. <u>Green v. L.A. County Superintendent of Sch.</u>, 883 F.2d 1472, 1480-81 (9th Cir. 1989).   The theory of continuing violations is an equitable doctrine that "prevent[s] a defendant from using its earlier conduct to avoid liability for later illegal conduct of the same sort."   <u>O'Loghlin v. County of Orange</u>, 229 F.3d 871, 875 (9th Cir. 2000).

To establish a continuing violation, Plaintiff must show "'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.'"   <u>Green</u>, 883 F.2d at 1480 (quoting <u>Valentino v. U.S. Postal Serv.</u>, 674 F.2d 56, 65 (D.D.C. 1982)).   "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original

20

violation." <u>Ward v. Caulk</u>, 650 F.2d 1144, 1147 (9th Cir. 1981)
(citing <u>Collins v. United Airlines, Inc.</u>, 514 F.2d 594, 596 (9th
Cir. 1975)); <u>see also</u> <u>Knox v. Davis</u>, 260 F.3d 1009, 1013 (9th Cir.
2001).  "Mere 'continuing impact from past violations is not
actionable.'"  <u>Williams v. Owens-Illinois, Inc.</u>, 665 F.2d 918, 924
(9th Cir. 1982) (quoting <u>Reed v. Lockheed Aircraft Corp.</u>, 613 F.2d
757, 769 (9th Cir. 1980)).

Plaintiff's Second Amended Complaint alleges that after his
knee was injured on January 27, 2004, Defendants failed to properly
treat his injury, which caused him pain, functional limitations,
and further injury.  (Second Am. Compl. 7.)  Evans does not purport
to state a cause of action for the original knee injury; rather, he
claims that it was Defendants' <u>failure to treat the injury</u> that
constitutes deliberate indifference to his medical needs.  (<u>See id.</u>
at 5-10.)  Accordingly, Plaintiff's cause of action did not accrue
on January 27, 2004, as Defendants argue.

Evans's allegations of deliberate indifference all relate to
the time that he was in the custody of the San Diego County Sheriff
as a detainee in the Vista jail and George Bailey Detention Center.
(Second Am. Compl. 3-10.)  The crux of his complaint is that he did
not receive arthroscopic knee surgery while in the sheriff
department's custody between January 27, 2004, when he as injured,
and June 10, 2004, when he was transferred to the custody of the
California Department of Corrections ("CDC").  (<u>See id.</u> at 5-6.)
He does not complain about any actions of CDC officials that
occurred after he was transferred to their custody.  Accordingly,
the continuing violation that he alleges spans in time from January
27, 2004, to June 10, 2004.  (<u>Id.</u> at 3-10.)

1      Defendants argue that to find a "continuing violation" where

2  deliberate indifference to medical care has been alleged would make

3  the statute of limitations "meaningless." (Reply 2.)   Evans is not

4  complaining about the discrete failures of doctors who treated him.

5  It is the aggregation of the failures to treat Plaintiff that gives

6  rise to his claim against the County of San Diego, Sheriff

7  Kolender, and Doctor Goldstein ("chief medical officer").   Because

8  Plaintiff's cause of action is based on a claim that he was denied

9  adequate medical care between January 27 and June 10, 2004, the

10  statute of limitations on his claim did not begin to run until June

11  11, 2004, the end of the alleged violation.

12      Other courts have applied a continuing violation analysis to a

13  deliberate indifference claim.  See Heard v. Sheahan, 253 F.3d 316,

14  318 (7th Cir. 2001) (finding that continuous violation doctrine

15  applied to defendants' deliberate indifference for the span of time

16  that prison officials were aware of plaintiff's injury and

17  allegedly refused to treat it); Lavellee v. Listi, 611 F.2d 1129,

18  1132 (5th Cir. 1980) ("[T]he [arrestee's] allegation of a failure

19  to provide needed and requested medical attention constitutes a

20  continuing tort, which does not accrue until the date medical

21  attention is provided."); Neel v. Rehberg, 577 F.2d 262, 263-64

22  (5th Cir. 1978) (per curiam) (finding that where inmate alleged

23  that jail officials failed to provide medical treatment over a

24  three-month period, the continuous violation doctrine applied and

25  the statute of limitations did not begin to run until the end of

26  that period); see also Shomo v. City of New York, No. 03 Civ. 10213

27  (AKH), 2005 U.S. Dist. LEXIS 5488, at *16 (S.D.N.Y. Apr. 4, 2005)

28  (stating that in a case alleging medical neglect, the unlawful

1  practice does not end until the last day that prison authorities

2  had a duty to provide plaintiff with medical care).

3       The statute of limitations, accordingly, began to run on June

4  11, 2004.  Plaintiff initiated the present lawsuit by filing his

5  Complaint on April 13, 2006, which is within the two-year

6  limitations period.  Because Evans alleges a continuing violation

7  and some of the actions he complains of occurred within the

8  limitations period, he can "reach back in seeking to prove

9  liability and estimate damages[]" to the first date that Defendants

10 were aware of his injury and refused to treat it.  Heard, 253 F.3d

11 at 318.  Plaintiff's case is not barred by the statue of

12 limitations, and thus Defendants' Motion to Dismiss should not be

13 granted on this ground.[1]

14

15

16

17       [1] Plaintiff's Opposition to Defendants' Motion to Dismiss also asserts that
   Evans should be entitled to equitable tolling of the statute of limitations due
18 to "perpetual lockdowns" in the prison.  (Pl.'s Opp'n 7; Pl.'s Mem. of P. & A.
   10.)  Presumably, Plaintiff is claiming that prison lockdowns made it difficult
   for him to prepare and file his federal Complaint.
19      Equitable tolling under California law is applied to prevent the unjust
   forfeiture of a plaintiff's causes of action based on application of harsh
20 technical rules.  Lantzy v. Centex Homes, 31 Cal. 4th 363, 370, 73 P.3d 517,
   523, 2 Cal. Rptr. 3d 655, 661 (2003) (citations omitted).  Application of the
21 doctrine requires balancing the injustice to the plaintiff if his claim is
   barred against the effect upon the public interests or policies inherent in the
22 statute of limitations.  Id. at 371, 73 P.3d at 524, 2 Cal. Rptr. 3d at 662
   (citation omitted).
23      Plaintiff bears the burden of showing that equitable tolling applies.
   United States v. Marolf, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999).  The only
24 evidence Evans provided to the Court is a letter he wrote to a judge of the
   superior court on March 5, 2005, requesting an extension of time to file and
25 serve a complaint.  (Pl.'s Lodgment No. 1, Evans v. County of San Diego, No.
   GIN042737, Letter from Plaintiff to Judge Stern 1 (filed Mar. 18, 2005).)  In
26 the letter Plaintiff asserts he was denied law library access due to prison
   lockdowns.  (Id.)  Evans has not met his burden of establishing circumstances
27 warranting equitable tolling.  He has not demonstrated that prison lockdowns
   caused any period of delay in filing his federal Complaint.  Additionally,
28 Plaintiff's own statements that he had insufficient library access, without
   more, are not enough to meet his burden.

1   **VII. DEFENDANTS HAVE NOT SHOWN THAT PLAINTIFF FAILED TO EXHAUST**
2   **ADMINISTRATIVE REMEDIES.**

3   Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act
4   ("PLRA") states:  "No action shall be brought with respect to
5   prison conditions under section 1983 of this title, or any other
6   Federal law, by a prisoner confined in any jail, prison, or other
7   correctional facility until such administrative remedies as are
8   available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The
9   exhaustion requirement applies regardless of the relief sought.
10  Booth v. Churner, 532 U.S. 731, 741 (2001).

11  "'[A]n action is "brought" for purposes of § 1997e(a) when the
12  complaint is tendered to the district clerk' . . . ."  Vaden v.
13  Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v.
14  Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners
15  must "exhaust administrative remedies before submitting any papers
16  to the federal courts."  Id. at 1048 (emphasis added).

17  Section 1997e(a)'s exhaustion requirement creates an
18  affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th
19  Cir. 2003).  "[D]efendants have the burden of raising and proving
20  the absence of exhaustion."  Id. (footnote omitted).  Defendants in
21  § 1983 actions properly raise the affirmative defense of failure to
22  exhaust administrative remedies through an unenumerated motion to
23  dismiss under Federal Rule of Civil Procedure 12(b).  Id.

24  Unlike Rule 12(b)(6) motions to dismiss for failure to state a
25  claim for which relief may be granted, "[i]n deciding a motion to
26  dismiss for failure to exhaust nonjudicial remedies, the court may
27  look beyond the pleadings and decide disputed issues of fact."  Id.
28  at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's

24

<u>Union</u>, 837 F.2d 365, 369 (9th Cir. 1988)).  "A court ruling on a

motion to dismiss also may take judicial notice of 'matters of

public record.'"  <u>Hazleton v. Alameida</u>, 358 F. Supp. 2d 926, 928

(C.D. Cal. 2005) (citing <u>Lee v. City of Los Angeles</u>, 250 F.3d 668,

688 (9th Cir. 2001)).  But "if the district court looks beyond the

pleadings to a factual record in deciding the motion to dismiss for

failure to exhaust[,] . . . the court must assure that [the

plaintiff] has fair notice of his opportunity to develop a record."

<u>Wyatt</u>, 315 F.3d at 1120 n.14.  "[When] the district court concludes

that the prisoner has not exhausted nonjudicial remedies, the

proper remedy is dismissal of the claim without prejudice."  <u>Id.</u> at

1120 (citing <u>Ritza</u>, 837 F.2d at 368 & n.3).

Plaintiff submitted a claim and amended claim to the County of

San Diego requesting monetary damages for his knee injury.  (Pl.'s

Opp'n 8; <u>see</u> Pl.'s Lodgment No. 10(h), County Claim Form, File No.

040266; Pl.'s Lodgment No. 10(e), Am. County Claim Form, File No.

040266 (Nov. 24, 2004).)  Evans also sent a letter to the jail

commander and a letter to Sheriff Kolender complaining about his

slip-and-fall accident and requesting all necessary documents or

forms so that he could file a claim for damages.  (<u>See</u> Second Am.

Compl. 14; Pl.'s Lodgment No. 10(I), Letter from Evans to Sheriff

Kolender (undated); Pl.'s Lodgment No. 10(j), Letter from Evans to

"Captain" (undated).)  Defendants argue, nevertheless, that

Plaintiff's Second Amended Complaint should be dismissed for

failure to exhaust because, "Plaintiff makes no mention of any

requests made, grievances filed, or any other procedures that are

in place to address inmate complaints."  (Defs.' Mem. of P. & A.

10.)

25

The failure to exhaust is an affirmative defense that must be pled and proven by the Defendants. _Wyatt_, 315 F.3d at 1119.  To prove that a plaintiff failed to exhaust his administrative remedies, the defendant must identify specific remedies that were available to the plaintiff and provide evidence showing they were not exhausted. _Brown v. Valoff_, 422 F.3d 926, 936-37 (9th Cir. 2005); _accord_ _Raines v. Pickman_, 103 F. Supp. 2d 552, 555 (N.D.N.Y. 2000); _see also_ _Snider v. Melindez_, 199 F.3d 108, 114 (2d Cir. 1999) (noting that the court was obligated to establish the availability of an administrative remedy before dismissing plaintiff's complaint for failure to exhaust).  "[T]here can be no 'absence of exhaustion' unless _some_ relief remains 'available[.]'" _Brown v. Valoff_, 422 F.3d at 936-37.  Defendants must come forward with relevant evidence demonstrating that there were remedies available to the prisoner. _Id._ at 937.  Relevant evidence may include "statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . ." _Id._ (citing _Brown v. Croak_, 312 F.3d 109, 113 (3d Cir. 2002)).

Defendants have not presented any relevant evidence showing that there were administrative remedies available to Evans.  Ninth Circuit cases have discussed the procedure set forth in the California Code of Regulations regarding administrative grievance procedures for inmates in state prisons, but those procedures did not apply to Plaintiff until he was transferred into state prison on June 10, 2004.  _See, e.g._, _Vaden v. Summerhill_, 449 F.3d 1047,

26

1048-49 (9th Cir. 2006) (citing <u>Brown v. Valoff</u>, 422 F.3d at 929-30).  The allegations in his Second Amended Complaint relate to the time while he was held in the sheriff's custody in San Diego County jails prior to his transfer to state prison.  Defendants have not presented any evidence showing that there were administrative grievance procedures available to Evans while he was housed in the county jails.  Plaintiff contends that the "appropriate action . . . was to file [a] claim against the county or its agents," (<u>see</u> Pl.'s Opp'n 8), and Defendants have not presented any evidence showing otherwise.  Accordingly, Defendants have not met their burden under <u>Wyatt v. Terhune</u> of proving that Plaintiff failed to exhaust.  Defendants Motion to Dismiss for failure to exhaust should be **DENIED**.

**VIII. PLAINTIFF'S SECOND AMENDED COMPLAINT DOES NOT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Evans's Second Amended Complaint alleges one cause of action: deliberate indifference to his serious medical needs in violation of the Fifth and Fourteenth Amendments.  (Second Am. Compl. 7.) Defendants contend, however, that his case must be dismissed for failure to state a claim because the facts alleged in the Second Amended Complaint, viewed in a light most favorable to Plaintiff, do not rise to the level of deliberate indifference.  (Defs.' Mem. of P. & A. 8.)  Defendants assert that at best Evans's allegations state a claim for medical negligence, but negligence alone is not a constitutional violation.  (<u>Id.</u> at 9.)

The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain . . . .'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (quoting <u>Gregg v. Georgia</u>, 428

U.S. 153, 173 (1976)) (additional citations omitted).  Accordingly, the government has an "obligation to provide medical care to those whom it is punishing by incarceration." Id.  Individuals who are detained before trial are entitled to similar protection under the Due Process Clause of the Fifth and Fourteenth Amendments. Bell v. Wolfish, 441 U.S. 520, 535 (1979).  Because Evans's alleged injuries occurred while he was a pretrial detainee, his claim must be analyzed under a substantive due process framework. See id. The due process analysis, however, does not differ greatly from the Eighth Amendment standard:  "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs.'" Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)).

To maintain a claim for deliberate indifference under § 1983, Plaintiff must establish two elements.  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

"Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important

and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting McGuckin, 974 F.2d at 1059-60).

The second element, deliberate indifference, is pled if the prisoner alleges facts that show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096. To be found liable for an Eighth Amendment violation, a prison "official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted).

The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1059). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). "Medical malpractice does not

become a constitutional violation merely because the victim is a

prisoner." <u>Estelle</u>, 429 U.S. at 106.

Defendants do not contend that Plaintiff's injury was not a

"serious medical need."  Instead, they focus on the second element,

alleging that their actions did not demonstrate deliberate

indifference.  Defendants contend that the facts show extensive

treatment of Evans's injury:

> Plaintiff was injured on January 27, 2004, was examined
> by at least eight different doctors inside and outside of
> jail in the next several months before his transfer to
> state prison in June of 2004.  The doctors examined his
> knee, prescribed numerous medications, recommended non-
> surgical exercises for Plaintiff, took x-rays of his
> knee, had an MRI of his knee done, and, finally,
> recommended surgery.

(Defs.' Mem. of P. & A. 9.)  Defendants also claim that Plaintiff

cannot show deliberate indifference because he has not presented a

medical opinion or other evidence to support his belief that he

should have received knee surgery before being transferred to state

prison.  (<u>Id.</u>; Defs.' Reply 3.)  Evans attempts to refute this

argument by asserting that although he was treated, his knee is now

worse than before and he suffers loss of mobility, severe

arthritis, scar tissue, chronic pain, and he must wear a knee brace

and use a cane because Defendants did not provide him with prompt

surgery after it was recommended.  (Pl.'s Mem. of P. & A. 13.)

"'A person deprives another "of a constitutional right, within

the meaning of section 1983, if he does an affirmative act,

participates in another's affirmative acts, or omits to perform an

act which he is legally required to do that <u>causes</u> the deprivation

of which [the plaintiff complains]."'"  <u>Redman v. County of San</u>

<u>Diego</u>, 942 F.2d 1435, 1439-40 (9th Cir. 1991) (quoting <u>Leer v.</u>

1  <u>Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988)).  Thus, to recover

2  damages against an individual defendant, "the inmate[] . . . must

3  prove (1) that the specific prison official . . . was deliberately

4  indifferent to the mandates of the [E]ighth [A]mendment and (2)

5  that this indifference was the actual and proximate cause of the

6  deprivation of the inmate[']s[] [E]ighth [A]mendment right . . . ."

7  <u>Leer</u>, 844 F.2d at 634 (citations omitted).  The causation inquiry

8  focuses on "whether the individual defendant was in a position to

9  take steps to avert" the harm to the plaintiff, as well as what

10 "the duties, discretion, and means of each defendant" were at the

11 time.  <u>Id.</u> at 633-34.

12      Plaintiff does not assert facts to suggest that any of the

13 Defendants were personally involved in the alleged deprivation of

14 his rights.  Instead, Evans contends that Defendant County of San

15 Diego has a policy, custom or practice of delaying or denying

16 adequate and meaningful medical treatment, including surgery, to

17 pretrial detainees.  (Second Am. Compl. 9.)  Plaintiff further

18 alleges that Defendants Kolender and "chief medical officer" acted

19 on behalf of the County in enforcing this policy.  (<u>Id.</u> at 9-10.)

20 The only allegations of personal involvement in Evans's medical

21 treatment concern particular medical care providers not named as

22 defendants in this suit.  (<u>See</u> <u>id.</u> at 3-6.)

23      In the absence of a claim that Defendants were personally

24 involved in the alleged deprivation of Plaintiff's rights, Evans

25 can state a cause of action under § 1983 by alleging that a policy

26 existed that led to the deprivation of his constitutional rights.

27 <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978); <u>Galen</u>

28 <u>v. County of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007)

(citations omitted); <u>Estate of Amos v. City of Page</u>, 257 F.3d 1086, 1094 (9th Cir. 2004).  A plaintiff attempting to prove that a municipality is liable for constitutional violations committed by its officials pursuant to official policy may establish such a claim three different ways:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

<u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting <u>Ulrich v. City & County of San Francisco</u>, 308 F.3d 968, 984-85 (9th Cir. 2002)).

Here, Plaintiff alleges that the County of San Diego has a policy of delaying meaningful medical treatment, such as arthroscopic surgery, to pretrial detainees in the county jails. (Second Am. Pet. 9-10.)  Defendants argue this claim is insufficient to withstand a motion to dismiss because Evans "does not identify [the policies] or even suggest what they might be." (Defs.' Mem. of P. & A. 10.)

"In [the Ninth Circuit], a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  <u>Lee v. City of Los Angeles</u>, 250 F.3d at 682-83 (quoting <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d at 624); <u>accord</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 484 n.10

(1986).  This Circuit's "bare allegation" requirement has been
upheld by the Supreme Court.  See Leatherman v. Tarrant County
Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 165-69
(1993); see Marsh v. San Diego County, 432 F. Supp. 2d 1035, 1053
(S.D. Cal. 2006) (discussing Leatherman).

     All that is required of a § 1983 plaintiff, just as federal
plaintiffs alleging other causes of action, is "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2); see Leatherman, 507 U.S. at 168;
Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir.
2002) (citations omitted); Nance v. Viergegge, 147 F.3d 589, 590
(7th Cir. 1998) ("Civil rights complaints are not held to a higher
standard than complaints in other civil litigation.").  In order to
prevail on this claim, Evans will have to prove that such a policy
exists and that the policy led to the deprivation of his
constitutional rights.  City of Canton v. Harris, 489 U.S. 378, 389
(1989); Larez v. Los Angeles, 946 F.2d 630, 645-46 (9th Cir. 1991).
Although Evans's allegations may prove to be unsubstantiated, he
has properly alleged the necessary elements of a § 1983 claim
against the County to survive a motion to dismiss.  See Leatherman,
507 U.S. at 168-69 (stating that because the federal rules employ
only a notice pleading standard, litigants must rely on discovery
and summary judgment "to weed out unmeritorious claims sooner
rather than later").

     He has also properly alleged claims against the other two
Defendants.  Sheriff Kolender and the County's chief medical
officer are sued in their individual capacities.  (Second Am.
Compl. 2.)  To state a cause of action against a government

official sued in his individual capacity, it is sufficient to
assert that the official implemented the policies that allegedly
violated the plaintiff's constitutional rights.   See Crawford-El v.
Britton, 523 U.S. 574, 595-96 (1998) (explaining that there is no
heightened standard of pleading or proof in civil rights cases
regarding motive of individual officers); see also Bacon v.
Kolender, No. 05cv0310 BTM (PCL), 2007 U.S. Dist. LEXIS 66274, at
*8-9 (S.D. Cal. Sept. 6, 2007) (finding plaintiff's complaint
sufficiently alleged the personal involvement of the sheriff when
it alleged that sheriff implemented the policies that plaintiff
claims violated his constitutional rights).

The Court cannot say that Plaintiff's Second Amended Complaint
presents "no cognizable legal theory or an absence of sufficient
facts alleged to support a cognizable legal theory."   See Navarro
v. Block, 250 F.3d 729, 732 (9th Cir. 2001).   Accordingly,
Defendants' Motion to Dismiss for failure to state a claim should
be **DENIED**.

**X. DEFENDANTS' RULE 12(e) MOTION TO REQUIRE A MORE DEFINITE STATEMENT SHOULD BE DENIED.**

Defendants assert that "Plaintiff's [Second Amended Complaint]
is too vague and ambiguous for Defendants to be able to frame a
proper responsive pleading[,]" and they request that the Court
require a more definite statement from Plaintiff.   (Defs.' Mem. of
P. & A. 11.)   Evans states that if that Court agrees with
Defendants and finds his Second Amended Complaint to be vague and
conclusory, he requests leave to file another amended complaint to
cure any deficiencies.   (Pl.'s Opp'n 8; Pl.'s Mem. of P. & A. 20.)

06cv877-JM (RBB)

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." Woods v. Reno Commodities, Inc., 600 F. Supp. 574, 580 (D. Nev. 1984); Nelson v. Quimby Island Reclamation Dist., 491 F. Supp. 1364, 1385 (N.D. Cal. 1980).

A motion for a more definite statement should be denied if a pleading meets federal standards by providing a "short and plain statement" of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). It is only proper if the complaint is so indefinite that the defendant cannot frame a responsive pleading. See Fed. Sav. and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988); Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981). The Court must deny the motion if the complaint is specific enough to apprise Defendants of the substance of the claim being asserted. See Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); FRA S.P.A. v. Surg-O-Flex of Am., 415 F. Supp. 421, 427 (S.D.N.Y. 1976).

The Court has reviewed Plaintiff's Second Amended Complaint in detail and finds that it is sufficient to meet the pleading requirements under the Federal Rules of Civil Procedure. Evans clearly alleges that although he saw numerous doctors in the months following his injury, he was not given the recommended surgery before he was transferred to state prison. (Second Am. Pet. 5-6.) He alleges that as a result, his knee was permanently and

irreparably damaged.  (<u>Id.</u> at 6, 7.)  Further, he claims that
Defendants had a duty to provide him with prompt and adequate
medical care, including surgery, but they violated that duty
pursuant to a San Diego County policy of failing to provide
pretrial detainees with recommended surgeries.  (<u>Id.</u> at 9-10.)
Although Defendants complain that Plaintiff has not specifically
identified the policy that might be implicated here, Evans's
allegations of municipal liability are sufficient to survive
dismissal, <u>see</u> <u>Marsh</u>, 432 F. Supp. 2d at 1053-54.  Defendants'
Motion for a more definite statement should be **DENIED**.

## XI. PLAINTIFF'S MOTION TO FILE THIRD AMENDED COMPLAINT SHOULD BE DENIED.

On July 2, 2007, Plaintiff filed a request to file a third
amended complaint [doc. no. 40].  Evans's motion, however, does not
describe what changes he wishes to make to his Second Amended
Complaint or why further amendment is necessary.  (<u>See</u> Mot. to
Amend 1.)  Defendants filed a Memorandum of Points and Authorities
in Opposition to Plaintiff's Motion [doc. no. 45] on August 8,
2007.

Plaintiff's motion was not accompanied by a proposed third
amended complaint, but from Defendants' Opposition it would appear
that Defendants were given a copy of the document.  Defendants
assert that Plaintiff's third amended complaint does not allege any
new or different facts, theories, or grounds for relief.  (Defs.'
Opp'n to Mot. to Amend 1-2.)  Instead, the third amended complaint
removes some of the factual detail regarding his medical treatment.
(<u>Id.</u>)

The Court should grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a). "'[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant.'" Lopez v. Smith, 203 F.3d at 1131 (quoting Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). Here, however, Plaintiff has not shown that amendment is appropriate.

A moving party is required to state the grounds for its motion "with particularity." Fed. R. Civ. P. 7(b); Waters v. Weyerhauser Mortgage Co., 582 F.2d 503, 507 (9th Cir. 1978). A "bare request" to amend, without stating the particular grounds for the amendment, is not a proper motion under Rule 15(a). Confederate Mem. Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993); accord Evans v. Pearson Enters., 434 F.3d 839, 853 (6th Cir. 2006); AT&T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999).

Plaintiff's motion does not set forth any grounds for amendment, nor is it accompanied by a proposed third amended complaint. The Court does not know what changes Evans proposes to make to his pleadings. Accordingly, Plaintiff's request to file an amended complaint should be **DENIED WITHOUT PREJUDICE**.

## XII. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Second Amended Complaint or Require a More Definite Statement should be **DENIED**. Plaintiff's request to file a further amended complaint should also be **DENIED WITHOUT PREJUDICE**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or

1   before January 7, 2008.  The document should be captioned

2   "Objections to Report and Recommendation."  Any reply to the

3   objections shall be served and filed on or before January 21, 2008.

4   The parties are advised that failure to file objections within the

5   specified time may waive the right to appeal the district court's

6   order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7

8   DATE:   December 6, 2007                _____
                                            RUBEN B. BROOKS
9                                           United States Magistrate Judge

10  cc:   Judge Miller
           All Parties of Record

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28